# IN THE UNITED STATES DISTRICT COURT

# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN RICHARDSON, | CASE NO. 1:13-cv-02944-GBC |
| Plaintiff, | |
| v. | (MAGISTRATE JUDGE COHN) |
| | MEMORANDUM |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | Docs. 1, 7, 8, 9, 11, 12, 13, 14 |
| Defendant. | |

## **MEMORANDUM**

### I.  Procedural Background

On April 19, 2011, John Richardson ("Plaintiff") filed an application for Title II Social Security Disability insurance benefits ("DIB"), with a date last insured of September 30, 2013,[1] and a disability onset date of November 20, 2006. (Administrative Transcript (hereinafter, "Tr."), 25).  After the claim was denied at the initial level of administrative review, the ALJ held a hearing on June 12, 2012.

---

[1] Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes.  The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured."

(Tr. 40-80).  On July 16, 2012, the ALJ found that Plaintiff was not disabled within the meaning of the Act.  (Tr. 22-39).  On September 14, 2012, Plaintiff filed a request for review with the Appeals Council (Tr. 17-21), which the Appeals Council denied on October 11, 2013, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner.  (Tr. 1-6).

On December 6, 2013, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) and pursuant to 42 U.S.C. § 1383(c)(3), to appeal a decision of the Commissioner of the Social Security Administration denying social security benefits.  (Doc. 1).  On March 14, 2014, the Commissioner ("Defendant") filed an answer and an administrative transcript of proceedings.  (Doc. 7, 8).  On April 30, 2014, Plaintiff filed a brief in support of the appeal.  (Doc. 9 ("Pl. Brief")).  On April 30, 2014, the Court referred this case to the undersigned Magistrate Judge.  On May 30, 2014, Defendant filed a brief in response.  (Doc. 11 ("Def. Brief")).  On June 9, 2014, Plaintiff submitted a reply brief.  (Doc. 13 ("Pl. Reply")).  Both parties consented to the referral of this case to the undersigned Magistrate Judge, and an order referring the case to the undersigned Magistrate Judge was entered on June 9, 2014.  Doc. 12, 14.

## II. Relevant Facts in the Record

Plaintiff was born on July 24, 1963, and thus was classified by the regulations as a younger person through the date of the ALJ decision rendered on July 16, 2012.  20 C.F.R. § 404.1563 (c).  Plaintiff graduated from high school and completed two years of college.  (Tr. 33, 50, 164).  Plaintiff alleges disability resulting from work-related injuries in November 2006.  Pl. Brief at 2; (Tr. 163). Specifically, Plaintiff alleged back pain due to spinal stenosis, herniated discs, and pinched nerves.  (Tr. 163).  Plaintiff also reported sleep apnea and carpal tunnel syndrome in both wrists.  (Tr. 53, 163).  Plaintiff previously applied for DIB and his application was denied following an administrative hearing on September 21, 2009.  (Tr. 83-93).  The ALJ decision was affirmed and motion for reconsideration was denied on October 25, 2012 in *Richardson v. Astrue*, No. 4:11-CV-00734 at Doc. 17.  *Richardson v. Astrue*, No. 4:11-CV-00734, 2012 WL 2711263 (M.D. Pa. July 2, 2012).

///

///

///

### A. Relevant Treatment History and Medical Opinions

### 1. Neurology Center: Matt Vegari, M.D.; Slobodan J. Miric, M.D.; Ralf Van Der Sluis, M.D.; and Martha Boulos, M.D.

The doctors from the Neurology Center treated Plaintiff from 2008 to 2010. On September 16, 2009, Dr. Van Der Sluis reported that the CPAP treatment "improved [Plaintiff's] sleep and he feels better during the day.'' (Tr. 305). Dr. Van Der Sluis noted that Plaintiff's pain was "relatively well controlled" with medication and that he was able to perform his average daily activities and look after his young children. (Tr. 305). On December 16, 2009, Dr. Van Der Sluis further noted that the CPAP treatment for sleep apnea was successful, that Plaintiff did not require Percocet on a daily basis to address his alleged pain, and that he was still capable of performing his daily activities and tending to his children without incident. (Tr. 303). Similar observations were reported on March 17, 2010 and, upon physical examination, Dr. Van Der Sluis observed that Plaintiff was "quite comfortable." (Tr. 302).

Plaintiff also visited with Martha Boulos, M.D. (Tr. 244, 246, 269, 396, 469). Dr. Boulos noted spinal stenosis, but observed that Plaintiff possessed full

motor strength bilaterally; a steady, normal gait; and the ability to tandem toe and heel walk without issue. (Tr. 244, 246-47, 249). In regard to Plaintiff's diagnosed sleep apnea, Dr. Boulos reported that on May 18, 2009, Plaintiff had used his CPAP[2] machine for approximately two months and responded well to the treatment. (Tr. 244). On July 17, 2009, Dr. Boulos noted that Plaintiff used his narcotic pain medication (Percocet) "very sparingly" and advised him not to deviate from his current medication regimen. (Tr. 463). She also advised Plaintiff to use soft splints at night to treat his carpal tunnel. (Tr. 463).

    Dr. Vegari noted spinal stenosis, select disc disorders, carpal tunnel syndrome and some neck movement limitations, but consistently reported that Plaintiff had: 1) 5/5 (full) motor strength in his arms and legs; 2) normal muscle tone; 3) no muscle atrophy; 4) no drift of outstretched arms; 5) intact sensory modalities and coordination; 6) functional, intact cranial nerves; and 7) an intact gait with normal base and stride. (Tr. 300, 397, 408, 410, 420, 438, 441, 444). From August 2011 through April 2012, Dr. Vegari repeatedly recommended for Plaintiff to receive physical therapy treatment in four-to-six week intervals. (Tr.

---

[2] CPAP stands for "Continuous Positive Airway Pressure." Dorland's Illustrated Medical Dictionary, 427 (32nd Ed. 2012).

259, 397, 408, 411).   On April 4, 2011, Dr. Vegari suggested lumbar facet injections but, Plaintiff decided against the treatment.  (Tr. 259).

Dr. Vegari directed Plaintiff to wear hand braces at night and when conducting repetitive wrist movements.  (Tr. 259, 420).  On November 2011, Dr. Vegari administered a Betadine solution injection to Plaintiff's wrists, and Plaintiff reported that this treatment dramatically relieved his alleged pain from a 9/10 level of pain to a 3/10 level of pain.  (Tr. 418).  Successful results were yielded once again when Dr. Vegari administered this treatment in December 2011.  (Tr. 413). In regard to Plaintiff's sleep apnea, Dr. Vegari reported that Plaintiff enjoyed successful results from the CPAP treatment.  After reviewing a comprehensive sleep study, Dr. Vegari reported that Plaintiff had a "good response" to CPAP treatment and enjoyed normal sleep latency and efficiency.  (Tr. 423).  Dr. Vegari directed Plaintiff to continue with the CPAP.  (Tr. 423).

With regards to medical opinions, Dr. Vegari gave cursory opinions at the end of treatment notes.  (Tr. 411, 445).  At the end of a treatment note dated January 18, 2011, Dr. Vegari opined that Plaintiff "remains totally disabled at this time." (Tr. 411).  At the end of a treatment note dated March 16, 2012, Dr. Vegari

stated "No lifting, pushing or pulling of more than five pounds. [Plaintiff] remains totally disabled."  (Tr. 445).

The Court notes that Plaintiff's previous federal court case also summarizes opinion evidence from the Neurology Center (Tr. 256), observing:

> Dr. Miric also stated that Richardson suffered from a "[t]otal disability" and Richardson was a surgical candidate because drugs had not alleviated his problem. Tr. 235. As for the statement that Richardson suffered from a total disability, Dr. Miric did not elaborate on Richardson's functional abilities, including his ability to sit, stand and walk or when Richardson's "total disability" commenced and how long it had lasted or was expected to last. Instead, he only offered a conclusory statement of disability.

*Richardson v. Astrue*, No. 4:11-CV-00734, 2012 WL 2711263, at *7 (M.D. Pa. July 2, 2012).

### 2.  Sethuraman Muthiah, M.D., Consultative Examination on March 4, 2008

During the examination with Dr. Muthiah, Plaintiff complained of a "sudden onset of lower extremity pain and numbness in November 2006."  (Tr. 217).  Upon physical examination and review of Plaintiff's medical records, Dr. Muthiah noted that Plaintiff had normal sensation and motor power, no muscle atrophy, and a

normal gait.  (Tr. 219).  Dr. Muthiah diagnosed Plaintiff with spinal stenosis and degenerative joint disease of the spine; he concluded that:

> [Plaintiff] can lift up to 25 pounds, carry 20 pounds, standing and walking 45 minutes, and sitting no limitation. He can perform postural activities occasionally. There are no limitations to other physical function and there is no environmental restriction.

(Tr. 212-13, 219).

### III.   Legal Standards and Review of ALJ Decision

To receive disability or supplemental security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A).  A claimant for disability benefits must show that he or she has a physical or mental impairment of such a severity that:

> [H]e is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step evaluation process to determine if a person is eligible for disability benefits. 20 C.F.R. § 404.1520; *accord Plummer*, 186 F.3d at 428. If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed. 20 C.F.R. § 404.1520(a)(4). The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. 20 C.F.R. §§ 404.1520, 416.920. Before moving on to step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e).

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four. *See Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national

economy that a person with the claimant's abilities, age, education, and work experience can perform. *Id.* The ultimate burden of proving disability within the meaning of the Act lies with the plaintiff. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

When reviewing the Commissioner's decision denying a claim for disability benefits, the Court must uphold the findings of the Commissioner so long as those findings are supported by substantial evidence. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 564 (1988) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence requires only 'more than a mere scintilla' of evidence, *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)), and may be less than a preponderance. *Jones*, 364 F.3d at 503. If a reasonable mind might

accept the relevant evidence as adequate to support a conclusion reached by the Commissioner, then the Commissioner's determination is supported by substantial evidence. *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999); *Johnson*, 529 F.3d at 200.

### A. Weight Accorded to Medical Opinions

Plaintiff argues that the ALJ erred when declining to accord significant weight to the medical opinions of Plaintiff's treating physician, Dr. Vegari. Pl. Brief at 10-11. At the end of a treatment noted dated January 18, 2011, Dr. Vegari opined that Plaintiff "remains totally disabled at this time." (Tr. 411). At the end of a treatment note dated March 16, 2012, Dr. Vegari stated "No lifting, pushing or pulling of more than five pounds. [Plaintiff] remains totally disabled." (Tr. 445). Plaintiff states that "[t]he only contrary medical evidence which exists and was evaluated [Dr. Muthiah's March 2008 opinion] preceded the disability claim of September 22, 2009 and continuing wherein the ALJ recognized that the two opinions reviewed were 'prior to the period in issue.'" Pl. Brief at 10-11 (internal citations omitted).

The ALJ can evaluate evidence from a prior claim. *See e.g.*, *Hillier v. Social*

*Security Administration,* 486 F.3d 359, 365 (8th Cir. 2007); *see also Robbins v. Secretary of Health and Human Services,* 895 F.2d 1223, 1224 (8th Cir. 1990) (citing *Wilson v. Califano,* 580 F.2d 208, 211 (6th Cir. 1978)); *Groves v. Apfel,* 148 F.3d 809, 810-11 (7th Cir. 1998); *Rucker v. Chater,* 92 F.3d 492, 495 (7th Cir. 1996) ("The first ALJ's finding was a binding determination with respect to [a plaintiff's] eligibility for disability benefits for that time period. It has no effect, however, on an application for disability benefits for a subsequent time period.").

As the Eighth Circuit has observed:

> Especially in the context of a progressive disease or degenerative condition, evidence that is offered as proof of a disability, and not found persuasive by an ALJ in a prior proceeding, may be considered in a subsequent proceeding in combination with new evidence for the purpose of determining if the claimant has become disabled since the ALJ's previous decision.

*Hillier v. Social Security Administration,* 486 F.3d 359, 365 (8th Cir. 2007) (citation omitted). The Seventh Circuit similarly observed that although final judgment denying application for social security disability benefits was res judicata, such does not render evidence submitted in support of that application inadmissible in a subsequent application alleging later onset date. *See Groves v. Apfel,* 148 F.3d 809, 810-11 (7th Cir. 1998).

In fact, it is necessary for an ALJ to evaluate evidence from a prior claim in order to determine whether a claimant's impairments in a subsequent claim have materially deteriorated so as to overcome res judicata.  *See Domozik v. Cohen*, 413 F.2d 5, 7, n.8 (3d Cir. 1969); *Stauffer v. Califano*, 693 F.2d 306, 307 (3d Cir. 1982) (observing that "several circuits have held that dismissals of 'new' claims that effectively repeat previously denied claims and which are therefore held by the Secretary to be *res judicata* are not reviewable"); 20 C.F.R. §§ 404.957(c)(1), 416.1457(c)(1); *cf. Labelle Processing Co. v. Swarrow*, 72 F.3d 308, 314 (3d Cir. 1995) (addressing where material facts occurring after a claim can give rise to a subsequent claim).  As the Third Circuit observed:

> "The plaintiff may not simply relitigate the same issues that were presented on the first application or else there would be no end to litigation before the administrative boards and the courts. To allow a claimant to file repeated applications . . . for different time periods without any *material medical change* during those periods is certainly violating all principles of finality as set forth in the Social Security Act and accompanying regulations."

*Domozik v. Cohen*, 413 F.2d 5, 7, n.8 (3d Cir. 1969) (quoting *Moore v. Celebrezze*, 252 F.Supp. 593, 595 (E.D. Pa. 1966)) (emphasis added); *see also Purter v. Heckler*, 771 F.2d 682, 690-91 (3d Cir. 1985) (discussing the criterion of whether

material facts are the same in the subsequent claim); *Hillier v. Soc. Sec. Admin.*, 486 F.3d 359, 365 (8th Cir. 2007) ("Res judicata only precludes subsequent applications for SSDI and SSI if the claimant 'has not presented any new evidence that . . . [his or her] condition changed or deteriorated" since the prior proceeding"); *Lester v. Chater*, 81 F.3d 821, 827-28 (9th Cir. 1995), *as amended* (Apr. 9, 1996); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1232-33 (6th Cir. 1993); *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir.1985) ("The subsequent deterioration of a claimant's previously non-disabling condition, after the date of the Commissioner's decision, may form the basis of a new claim).[3]

At the adjudicatory level, it is Plaintiff's burden to present evidence showing that his symptoms or limitations have materially changed since the time of the determination of the prior claim. *See Money v. Barnhart,* 91 Fed. App'x. 210, 215 (3d Cir. 2004) (reiterating that it is a claimant's burden to develop the record

---

[3] In *Lester v. Chater*, the Ninth Circuit cautioned that a claimant need not, however, demonstrate that his or her medical or psychiatric condition has worsened to show changed circumstances, finding other changes to be material enough to prevent the application of res judicata, for example: 1) a change in the claimant's age category, as defined in the Medical–Vocational Guidelines; 2) where the claimant presents the existence of an impairment not considered in the previous application; and, 3) where the claimant was unrepresented by counsel at the time of the prior claim. *Lester v. Chater*, 81 F.3d 821, 827-28 (9th Cir. 1995), *as amended* (Apr. 9, 1996) (internal citations omitted). The Third Circuit has yet to decide whether the same enumerated changed circumstances would similarly prevent the application of res judicata.

regarding his or her disability); *Domozik v. Cohen*, 413 F.2d 5, 7, n.8 (3d Cir. 1969); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1232-33 (6th Cir. 1993). As the Sixth Circuit has held, when a plaintiff previously has been adjudicated not disabled, the plaintiff must show that his or her condition worsened in comparison to that which was established in the preceding claim to a degree sufficient to demonstrate an inability to perform substantial gainful activity. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1232-33 (6th Cir. 1993).

Although Plaintiff heavily relies on the cursory opinions of Dr. Vegari (Pl. Brief at 11), the Court notes that such opinions are substantially the same as the February 2008 opinion given by Dr. Miric, a fellow doctor in the same "Neurology Center." (Tr. 256). In Plaintiff's previous case, the court observed:

> Dr. Miric also stated that Richardson suffered from a "[t]otal disability" and Richardson was a surgical candidate because drugs had not alleviated his problem. Tr. 235. As for the statement that Richardson suffered from a total disability, Dr. Miric did not elaborate on Richardson's functional abilities, including his ability to sit, stand and walk or when Richardson's "total disability" commenced and how long it had lasted or was expected to last. Instead, he only offered a conclusory statement of disability.

*Richardson v. Astrue*, No. 4:11-CV-00734, 2012 WL 2711263, at *7 (M.D. Pa. July 2, 2012). Similarly, the cursory opinions from Dr. Vegari presented in the

subsequent claim do not give much detail as to what Plaintiff's limitations are at the time, and do not state that Plaintiff's condition had deteriorated, or cite to any supporting evidence or explanation for the opinions. (Tr. 411, 445). As such, Dr. Vergari's cursory opinions would not be sufficient to demonstrate that Plaintiff's symptoms and limitations have materially changed since the prior ALJ decision, let alone sufficient to trigger an obligation on the part of the ALJ to contradict it with an additional medical opinion at the preliminary evaluation for res judicata. *See Rogerson v. Sec'y of Health & Human Servs.*, 872 F.2d 24, 29 (3d Cir. 1989) (rejecting the argument that *res judicata* should not be applied in a Social Security claim until after there has been a hearing on the merits).[4]

However, once an ALJ decides that res judicata does not preclude review of the subsequent claim and proceeds to the merits to determine "[w]hether an individual is 'disabled' under the Act," Social Security Ruling ("SSR")[5] 96-5p emphasizes the importance of the ALJ to make "every reasonable effort to

---

[4] The ALJ noted that at the time of his decision, Plaintiff's previous claim was still pending judicial review in federal court. (Tr. 25). Thus the prior decision was not "final by . . . judicial action." 20 C.F.R. § 404.957(c)(1); 416.1457(c)(1).

[5] Although SSA rulings do not have the force and effect of a statute or regulation, they are binding on all components of the SSA in accordance with section 402.35(b)(1) of the SSA Regulations (20 C.F.R. § 402), and are to be relied upon as precedents in adjudicating other cases.

recontact [medical source opinions] for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear. . . ." SSR 96-5p at *2.  In this instance, the ALJ proceeded to the merits, however, the record is absent any indication that the ALJ sought to "recontact" any of the medical sources for clarification or updated amendments to the opinions.

The ALJ discredited Dr. Muthiah's March 2008 opinion, finding "that later records, including findings upon examination and diagnostic testing, support a finding that the claimant is more restricted in his activities." (Tr. 32).  The ALJ relied on his own lay interpretation of medical records to discredit Dr. Muthiah's March 2008 opinion.  The ALJ discredited all of the medical opinions, lastly stating that "the record does not contain an assessment of the claimant's physical limitations from a state agency medical consultant. The Physical Residual Functional Capacity assessment was done by a single decision maker (Exhibit B2A). These findings are not 'medical opinion' evidence since they do not come from medical sources."  (Tr. 32).  The ALJ concluded that Plaintiff had "the residual functional capacity to perform at a range of a sedentary exertional level with limitations resulting from his impairments." (Tr. 32).

In this instance, the ALJ erroneously discredited medical opinions based on his own lay interpretation of medical evidence.  *See Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986); *Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir.1985) (The ALJ may not substitute his own judgment for that of a physician).

Based on the foregoing, the ALJ's allocation of weight to the medical opinions and resulting RFC determination are not supported by substantial evidence, thus warranting a remand.

### B. Credibility Determination for Lay Statements

Plaintiff contends that the ALJ erred in assessing Plaintiff's credibility based on his activities of daily living.  Pl. Brief at 9.

Great weight is given to a claimant's subjective testimony only when it is supported by competent medical evidence.  *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979); accord *Snedeker v. Comm'r of Soc. Sec.*, 244 F. App'x 470, 474 (3d Cir. 2007).  An ALJ may reject a claimant's subjective testimony that is not found credible so long as there is an explanation for the rejection of the testimony.  *See* SSR 96-7p; *Schaudeck v. Comm'r of Social Security*, 181 F.3d 429,

433 (3d Cir. 1999). Where an ALJ finds that there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's pain or other symptoms, however, the severity of which is not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. SSR 96-7p. In determining a claimant's credibility regarding the severity of symptoms, the ALJ must consider the following factors in totality: (1) the extent of daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication; (5) treatment other than medication for the symptoms; (6) measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. SSR 96-7p; 20 C.F.R. §§ 404.1529, 416.929; *accord Canales v. Barnhart*, 308 F. Supp. 2d 523, 527 (E.D. Pa. 2004).

Given the requisite totality analysis to assess Plaintiff's credibility and the Court's above finding that remand is required, upon receiving additional evidence,

the ALJ would need to reassess Plaintiff's credibility based on the above-enumerated factors.

## IV.    Conclusion

Based on the foregoing, the Court finds that the ALJ's decision lacks substantial evidence.  Pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner is vacated, and this case is remanded for further proceedings.

An appropriate Order in accordance with this Memorandum will follow.


Dated: April 10, 2015                                      *s/Gerald B. Cohn*
                                                                    GERALD B. COHN
                                                            UNITED STATES MAGISTRATE JUDGE